[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15414
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-01363-JSM-AEP

ALTON E. PACE,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 16, 2014)

Before HULL, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Alton Pace is a Florida state prisoner who pled guilty to multiple violent felonies, including attempted murder of his common-law wife and aggravated assault with a firearm of another victim. This appeal involves only Pace's sentence. The statutory maximum for Pace's attempted murder and aggravated assault crimes was life. The high end of Florida's sentencing guidelines range was 16 years and 9 months for Pace's crimes. The government requested a thirty-year sentence. Pace argued for a ten-year sentence, and the state court imposed a twenty-year sentence.

Pace appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. He asserts that his trial counsel was constitutionally ineffective at his sentencing for failing to object to unsworn statements made by the victim wife and others. Pace argues that without these statements, the state court would have imposed a lower sentence. After review, we affirm because Pace has not shown that the state court's finding—that he failed to show prejudice—was unreasonable.

## I. BACKGROUND FACTS

### A. Offense and State Charges

In August 1997, Pace entered the home of his estranged common-law wife, Joice Massa, and shot her with a firearm. At the time of the shooting, other people

were also in the home, including Tim and Michelle Spalding, Massa's then-boyfriend, Monti Andrews, and Massa's two children with Pace.

In September 1997, the State of Florida charged Pace with: (1) attempted first degree murder (of Massa), in violation of Florida Statutes §§ 777.04, 782.04 (Count 1); (2) armed burglary of a dwelling, in violation of Florida Statutes § 810.02(2)(b) (Count 2); (3) aggravated assault (of Andrews) with a firearm, in violation of Florida Statutes § 784.021 (Count 3); and (4) misdemeanor criminal mischief, in violation of Florida Statutes § 806.13(1)(b)(1) (Count 4). Pace faced a maximum life sentence for Counts 1 and 2 and a maximum five-year sentence on Count 3. Under the Florida Sentencing Guidelines, Pace's guidelines range was 121 to 201.25 months (or 16 years and 9 months) of imprisonment.

An assistant public defender, Marie Samuels, represented Pace during pretrial discovery and early plea negotiations. In September 1999, Pace substituted retained counsel, Michael Giordano. The state offered a plea deal of 14 years in prison. Pace counteroffered ten years in prison, which the state rejected. Ultimately, Pace entered an open guilty plea to all four counts at a combined plea and sentencing hearing.

## B.    Plea and Sentencing Hearing

During the hearing, the state court placed Pace under oath and inquired about his decision to plead guilty and the rights he was giving up. Pace indicated

3

that he had consulted with his attorney and that he was freely and voluntarily pleading guilty to the four charged counts.

As for the factual basis for the plea, the prosecutor stated that, on August 16, 1997, Pace broke into Joice Massa's home, damaging the door, pointed a gun at Monti Andrews, and attempted to kill Massa by shooting her "approximately seven or eight times" while she lay on the floor. The night before the shooting, Pace saw Massa at a local bar and there was a confrontation. The next day, Massa was at home with Andrews watching television. Pace and Massa's two children were also present. At this point in the prosecutor's statement, Pace's defense counsel objected "to this being outside the factual basis of the charges here." When the prosecutor indicated that there were more facts, the state court asked whether sentencing would occur "right now or are we going to set it off?" Defense counsel stated, "We are prepared."

The prosecutor continued reciting the factual basis for the plea, asserting that the two children were inside the home and that Pace broke through the door of the home, chased Massa into the kitchen where she was on the ground, and then shot her "at least eight times." The prosecutor stated that "[t]he children at some point were very close by according to Ms. Massa's testimony to me. They were in danger of also getting hit as well."

4

The state court asked Massa how she was doing physically. Massa, who was not under oath, responded that she was doing better, but that her recovery was taking a long time. Massa introduced her two children, mother, and stepfather.

The state court asked defense counsel whether Pace wished to say anything. Defense counsel responded that: (1) Pace had never denied his guilt; (2) Pace had shown remorse by writing a letter apologizing to Massa and his children; and (3) the state had offered 14 years, followed by ten years of probation. Defense counsel asked for a sentence at the low end of the guidelines range. Pace addressed the court and apologized to Massa and his children. Pace stated that he had a drinking problem and would not have committed the offenses if he had not been drinking.

The state court asked Massa if there was anything she wanted to say. Massa, who was still not under oath, stated that her two children watched Pace shoot her and that William, her son, was standing close behind her. As to her injuries, Massa could not feel anything on her right side or use her hand. While hospitalized, Massa had chest tubes because Pace shot her lung twice. The doctors had to "cut meat away from [her] hand" twice each day to allow "the hole to grow back together" and had to "unpack [her] stomach and repack it back together because they couldn't sew it shut." Massa returned to the doctor once every two months to have shrapnel removed, and the doctors removed "bullet number eight" last October. Massa still had shrapnel in her side and hip, where a bullet hit her back,

5

and she still had a bullet in her collar bone.  Massa still had problems with her leg and went to therapy.

Massa also stated that when she was shot, her son "was close enough that he was able to get under my head and hold my head and then he pulled my fingers together and he kept patting me on the back telling me it will be all right," and "[a]bout the last four shots he was" right behind Massa.  Massa stated that, although Pace blamed his offenses on the alcohol, "[h]e was just as mean sober as he was when he drank and it never ended.  That's why I left him."  At no time during Massa's statements did Pace's attorney object and ask that she be sworn.

Massa's mother, Betty Humphrey, made an unsworn statement to the court. Humphrey witnessed Pace abuse Massa and their children for years.  Humphrey said that Pace had shortened Massa's life, that half of Massa's insides were missing, that Massa was "scared for her life," and that her children were traumatized by the incident.  Massa's stepfather, E.W. Humphrey, made an unsworn statement that Massa was going to die at an early age because of her injuries.  Defense counsel did not object to the Humphreys' statements or ask that they be sworn.

The prosecutor asked the court to "depart upward" and impose a thirty-year sentence because: (1) one of Massa's children was close to Massa when Pace shot her, which created a substantial risk of death or great bodily harm to the child; (2)

6

Massa "was shot while on the ground in a helpless position at least eight times," which showed she suffered extraordinary physical and emotional trauma or permanent physical injury and was treated with particular cruelty; (3) Massa was shot in the presence of her child; and (4) the offense involved multiple victims and multiple incidents per victim.

In response, defense counsel acknowledged that Massa's injuries were very serious, but argued that the severity of her injuries was already reflected in the guidelines calculations. Defense counsel disputed the prosecutor's facts, including the number of shots Pace fired, whether Pace chased Massa through the house, whether Pace continued to fire after Massa lay on the floor, and whether the children were present. Defense counsel stated that the Florida Department of Law Enforcement reports refuted that eight shots were fired. Rather, Massa had suffered from shrapnel injuries.

Defense counsel explained that "[t]here was a bone of contention" about who was present during the shooting "and that's why the depositions should have been taken." But, defense counsel stated that he "decided not to do certain things to upset this family further . . . ."

The state court stated that during plea negotiations about a plea to a 14-year sentence, the state court had not known the facts. Having now heard the facts, the

state court was not inclined to stay within the guidelines and expressly offered to let Pace withdraw his guilty plea, as follows:

> Based on what I now know, sir, I cannot assure you or your attorney that I will stay within the guidelines. And I think you need to know that so if you want to withdraw your plea and go to trial, you have that right. I want you to understand that if I sentence you to 30 years, you can't say, woe, wait a minute.
> You also need to know that if I reject it that we are going to go to trial and depositions will be taken and we will have a trial date.

The state court recessed to allow Pace to consult with his attorney.

When the state court reconvened, Pace stated that he wanted to plead guilty, but asserted that this was the first time he had ever hurt someone. The state court responded, "It sounds to me like you've been giving her a hard time for a long time, Mr. Pace." Defense counsel stated that he wanted to address this and other factual issues. The state court indicated that defense counsel could "say anything [he] want[ed] to say," but that the court thought a twenty-year sentence was "the fair resolution in this case" because Pace pulled the trigger with the intent to kill the victim. The state court explained that "the fact is he pulled the trigger" was "inexcusable. And he kept -- your intentions were to kill her that night, Mr. Pace. You just didn't succeed. Your intentions were to kill her, but you didn't." The state court concluded, "Again, I'll hear whatever he wants to say. But understand that's my intentions right now. He may say something and I may give him 30 years."

8

Defense counsel responded that the court had only "heard one side of the facts" and that he wanted to "round out the facts for the court." Defense counsel represented that based on police reports, Pace entered the home through a door to the bedroom where Andrews was watching television. Andrews said "please don't kill me," and Pace ignored him, walked by him and entered into the living room. Massa heard Andrews say "don't shoot, turned and saw Mr. Pace and got shot." Defense counsel disputed Massa's claim that Pace chased her through the home.

Defense counsel stated, "I want the court to understand that there are two sides. We're not denying the shooting. But there's two sides to this picture here." Counsel explained that Pace spent the previous night with Massa, had been in and out of the home several times that day, and had become enraged when he saw Massa with Andrews. Counsel reiterated that Pace was extremely intoxicated at the time of the shooting. Counsel clarified that Pace was not disputing his guilty plea, that he was "here to take his medicine," and that "these are the arguments that would have been made to the jury."

Defense counsel argued that in her deposition, Massa said she was in the bathroom when she heard "a bang of the door" as Pace entered the bedroom, and that she was shot as she came around the corner. Defense counsel acknowledged that "we had some discrepancy as to who was present there" during the shooting. Defense counsel stated that, although he had decided not to take further depositions

9

(presumably of the children) to resolve the dispute, he had "real problems" with Massa's hearing statement in light of her above deposition testimony. Defense counsel reiterated his request for the 14-year guidelines sentence originally offered in November 1999.

In response, the prosecutor stated that he was part of the original plea negotiations, and his recollection was that Pace rejected the state's 14-year offer because he wanted a ten-year plea deal. The prosecutor did not challenge what defense counsel said and admitted that Massa spent the night with Pace the night before the shooting. The prosecutor contended that Massa did so because she felt threatened by him.

At this point, the state court found that there was a factual basis for the plea and adjudicated Pace guilty of all four counts. The state court stated that it would have rejected the 14-year plea deal once it had heard the factual basis for the guilty plea and thus Pace was not harmed by his defense counsel's representation. Although the prosecutor requested thirty years, the state court sentenced Pace to a twenty-year prison term on Counts 1 and 2, a five-year prison term on Count 3, and time served on Count 4, each sentence to run concurrently.

In a written list of reasons for departing from the sentencing guidelines, the state court noted four aggravating factors: (1) the "[o]ffense created substantial risk of death or great bodily harm to many persons or to one or more small children";

10

(2) the "[v]ictim suffered extraordinary physical or emotional trauma or permanent physical injury, or was treated with particular cruelty"; (3) the [v]ictim was physically attacked by the defendant  in the presence of one or more members of the victim's family"; and (4) the "[o]ffense involved multiple victims or multiple incidents per victim."

## B.    2000 Direct Appeal in State Court

In 2000, Pace appealed his state convictions and sentences.  On appeal, Pace argued that the trial court abused its discretion in imposing a sentence above the sentencing guidelines and that the state had not presented sufficient evidence to support the upward departure.  As to the aggravating factors, Pace argued that: (1) the only evidence supporting the first and third factors—the risk of harm to one or more small children and the attack in the presence of Massa's family—was Massa's unsworn testimony; (2) the state presented no evidence to support the second factor as to the extent of Massa's injuries or emotional trauma; and (3) the fourth factor, relating to the number of victims or incidents, applied only to economic crimes.

In response, the government argued that: (1) Pace "failed to preserve" for appeal the issue of Massa's unsworn testimony by objecting to it during the plea and sentencing hearing; (2) the appellate court should not substitute its judgment for that of the trial court's with respect to Massa's credibility and the weight to be

11

given her testimony; (3) Massa's statements supported the trial court's first three aggravating factors; and (4) the admitted invalidity of the fourth factor was harmless because, under Florida law, only one valid reason is needed to support a departure sentence.

In 2001, the state appellate court affirmed Pace's convictions and sentences. See Pace v. State, 804 So. 2d 1256 (Fla. Dist. Ct. App. 2001) (unpublished table decision).

## C.    Pro Se State Petition for Habeas Corpus

In 2002, Pace filed a pro se "Petition for Belated Appeal Ineffective Assistance of Counsel" in the Florida Second District Court of Appeals, which was construed as a habeas petition.  Pace's petition claimed that the sentencing court failed to put the witnesses under oath and that Pace's trial counsel was ineffective for failing to object to the trial court's reliance on unsworn statements to support the upward departure sentence.

The state responded that Pace's trial counsel was not ineffective because he raised the issue of Massa's unsworn testimony on appeal, and that in any event, Pace was not prejudiced by the failure to place Massa under oath.  Specifically, the state argued that "[h]ad the witness been sworn, she still would have given the same testimony and had trial counsel timely objected, the judge would merely have sworn the witness."

The Florida Second District Court of Appeals denied Pace's habeas petition and later denied Pace's motion for rehearing and rehearing en banc.

**D.    Rule 3.850 Post-Conviction Motion**

In 2003, Pace filed in state court a pro se motion for post-conviction relief, pursuant to Florida Rule of Criminal Procedure 3.850.  Pace argued that his trial counsel was ineffective for, inter alia, failing to object to, and preserve for direct appeal, the unsworn statements of Massa, her mother, and her stepmother at the sentencing hearing.  Pace asked that he be resentenced to a guidelines sentence.

In 2003, the state 3.850 court denied Pace's motion with respect to Pace's claim about the unsworn statements.  The state 3.850 court found that Pace had not shown prejudice under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), because the victim's unsworn statements were not the sole basis for the upward departure and the state court had valid reasons for its departure sentence without those statements.

The state 3.850 court's order allowed two of Pace's other ineffective assistance claims—failure to conduct adequate presentencing investigation into the victim's version of events and failure to object to the trial court's reasons for the departure— to proceed to an evidentiary hearing.  Pace then filed "newly discovered evidence," consisting of 2004 affidavits of Massa and her son William Pace.  Massa's affidavit averred that she made misstatements at Pace's plea-

13

sentencing hearing because she was in shock the night she was shot and was not sure what actually happened. Massa felt pressured by family and friends to say things at the hearing that she was unsure about. Now, seven years later, Massa contended that she was shot only three times. She and her son William both averred that Massa's children were not in the room when she was shot and that William entered the room only afterward.

At the evidentiary hearing, Massa testified that she had no independent recollection of the night of the shooting, but that she had since obtained the ballistic reports, police reports, and information from the bullet manufacturer. Based on this information, Massa now believed that she was shot only three times and that many of her injuries were caused by fragments from the splintering bullets or were exit wounds. Massa's two children testified that they were not present in the room when Pace shot Massa. Massa's son William stated that after his mother was shot and his father fled, he entered the room and held his mother's head.

After the evidentiary hearing, the state 3.850 court denied Pace's remaining claims. Pace appealed, and the state appellate court affirmed. See Pace v. State, 973 So. 2d 451 (Fla. Dist. Ct. App. 2007) (unpublished table decision).

### E.    Section 2254 Petition

In 2011, following state proceedings not relevant to this appeal, Pace filed the instant pro se § 2254 petition, asserting multiple grounds for relief. Ground

14

Two alleged that Pace's trial counsel was constitutionally ineffective by failing to object at sentencing to the unsworn statements of Massa and her family and that the state trial court relied upon those statements to impose the upward-departure sentence.  Pace's § 2254 petition requested a new sentencing hearing.  In 2012, the district court denied Pace's § 2254 petition on all grounds.

Pace appealed.  This Court granted a certificate of appealability as to "[w]hether the district court erred in denying Ground Two of Pace's habeas corpus petition."

## II.  DISCUSSION

### A.    AEDPA and Ineffective Assistance

Pursuant to § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may only grant habeas relief on claims previously adjudicated on the merits in state court if the state court's decision was (1) "contrary to, or involved an reasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).[1]

---

[1]We review <u>de novo</u> the district court's determination as to whether the state court acted contrary to or unreasonably applied clearly established federal law, or made an unreasonable determination of fact.  <u>Hall v. Thomas</u>, 611 F.3d 1259, 1284 (11th Cir. 2010).  In reviewing the §2254 petition <u>de novo</u>, however, we "owe deference to the final state habeas judgment."  <u>Id.</u> (quotation marks omitted).

15

To establish constitutionally ineffective assistance under Strickland, the § 2254 petition must show that his Sixth Amendment right to counsel was violated because (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064-65.

Here, the state 3.850 court found that Pace had not satisfied the second prong of Strickland by showing prejudice from his counsel's failure to object to the unsworn statements of Massa and her family. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "It is not enough for the [petitioner] to show that the error[ ] had some conceivable effect on the outcome of the proceedings." Id. at 693, 104 S. Ct. at 2067. Rather, a reasonable probability is one sufficient to undermine confidence in the outcome. Id.

## B.    Pace's Sentence

Considering the record as a whole, we cannot say that the state court's determination as to prejudice was unreasonable. As background, Florida law specifically provides that a victim may "[a]ppear before the sentencing court for the purpose of making a statement under oath for the record." Fla. Stat. § 921.143(1)(a) (emphasis added). And, "[a]n unsworn witness is not competent to

16

testify." Willis v. Romano, 972 So. 2d 294, 294 (Fla. Dist. Ct. App. 2008) (quotation marks omitted). Thus, Pace's trial counsel should have objected to the victim's unsworn testimony and preserved that issue for direct appellate review. But, even without that original-sentencing testimony, the record shows that at the 3.850 hearing, the witnesses, under oath, testified that: (1) Pace shot Massa three times and seriously injured her, (2) their two children were in the house, and, (3) even if her son was not nearby, he entered the room just after the shooting and held his mother's head in his lap while she lay on the floor. Notably, at the 3.850 hearing, Massa never denied these facts or recanted her prior statements about the serious nature and extent of her massive injuries. This is not an attempted-murder case where the defendant shot and missed, but one where Pace shot several times and inflicted massive and serious injuries and significant emotional trauma.

Florida Statutes § 921.0016, applicable at the time of Pace's 1997 offense, set forth a "nonexclusive list of grounds for departure, i.e., aggravating and mitigating factors." See Banks v. State, 732 So. 2d 1065, 1067 n.2 (Fla. 1999); see also Fla. Stat. § 921.0016(3)-(4) (1995). In addition, the state appellate court would uphold a trial court's departure sentence when at least one § 921.0016

17

sentencing factor justified the departure, regardless of whether other factors did or did not justify the departure.  Fla. Stat. § 921.001(6) (1995).[2]

Here, the upward departure was supported by this one aggravating factor alone in § 921.0016: "[t]he victim suffered extraordinary physical or emotional trauma or permanent physical injury, or was treated with particular cruelty."  See Fla. Stat. § 921.0016(3)(*l*) (1995).  Further, the statutory maximum was life, the state requested at least a thirty-year sentence, and the state court imposed a twenty-year sentence.  Under the record as a whole, Pace has not carried his burden to show a reasonable probability of a different result, and we cannot say the state 3.850 court's finding as to prejudice was unreasonable.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Pace's § 2254 petition with respect to his ineffective assistance claim alleged in Ground 2.

**AFFIRMED.**

---

[2]Parts of Chapter 921 of the Florida Statutes were repealed on October 1, 1998, including the provisions governing departure sentences, but the former version of the statute remains in effect for any offense committed before October 1, 1998. See Fla. Stat. § 921.001 (2013); 1997 Fla. Laws ch. 97-194, § 1.